EDWARD GRAVES and CAROLINE E. GRAVES, his Wife, and others *vs.* WILLIAM SPEDDEN and MARY E. SPEDDEN, his Wife, and others.

*Advancement—Admissibility of parol evidence to show whether a gift or an advancement was intended—Res Gestæ—Competency of Witnesses under sec. 2 of the Act of 1864, ch. 109, as modified by the Acts of 1868, ch. 116, 1874, ch. 385, and 1876, ch. 222.*

In this State, as in England, a gift of money or property by a parent to a child is presumptively an advancement, but this presumption may be repelled or rebutted by evidence proper for the purpose.

Whether such a gift takes the character and legal properties of an advancement, or those of a full and absolute gift without a view to a portion or settlement, depends on the intention of the donor.

And that intention may be ascertained by parol evidence of the donor's declarations at the time of executing the conveyance or making the gift, or of the donee's admissions afterwards; or by proof of facts and circumstances from which the intention may be inferred.

A father in consideration of natural love and affection, conveyed by deed his home farm to his three sons, R., W. and C. on condition, that it should never be sold out of his family, and reserved to himself a life estate therein. It was not expressed in the deed whether the conveyance was intended as a gift or an advancement. HELD :

That neither the restriction upon alienation, nor the reservation of a life estate indicated any intention to make it other than an advancement.

A bill was filed by R. against his brothers and sisters, and the children of two deceased sisters, for a partition of the other real estate of which the father died seized and intestate. The daughters averred in their answers, that the three sons, R., W. and C. were advanced in their father's life-time by the conveyance to them of his home farm, and that H. the other son had borrowed of his father $1500 secured by his notes, which his father in his life-time had destroyed with a view of giving this sum of money to H. as

Graves, *et al.* *vs.* Spedden, *et al.*

an advancement; and they asked that these advancements might be brought into the estate for division with the other property. The complainant R. was called as a witness by his brothers, who were some of the defendants to the bill, but had the same interest in the question at issue as himself. This witness after stating several previous conversations with his father, in which the latter expressed his wish to deed the farm to his three sons to whom it was afterwards conveyed, testified in substance, that his father gave him written instructions for the preparation of the deed, and assigned as a reason for giving his boys more than his girls, that both his grandfathers had done so, and added "You boys have made the most of my money, and I am determined you shall have the most of it, and you are standing in your own light in not having the deed prepared." That witness went to town the following Monday, and got the deed prepared. On the next day he took the deed over to his father who approved it, and said "When this deed is executed I am going to destroy H's notes." Witness then said to him, "I thought you once said H. had. gotten his part." To which his father replied, "I did say so, but there has something accumulated since, and I have changed my mind," and further said, "When I destroy H's notes, it will make him fully equal with you and W. in the land, but not quite as much as C." That his father then also said, "I want you boys to have that *much more* than the girls, and *all the rest* of my property I want divided *equally among all my children;* this will give you $1000 or $1200 a piece, and that will be a nice little present for each of you." That his father then appointed the following Saturday, which was the usual business day in that part of the county, for the execution of the deed, but finding the magistrate was from home, he afterwards postponed it until the next Saturday; on which day the deed was executed and delivered to witness to get it recorded, which was done. HELD:

1st. That said declarations were part of the *res gestæ*, and properly received in evidence for the purpose for which they were offered.

2nd. That the declarations respecting the gift to his son H. by the destruction of his notes, being made at the same time and under the same circumstances, were of the same character.

3rd. That the declaration of his intention to destroy these notes at the time the deed was executed, coupled with the facts, proved in the case, that they were never afterwards seen in his possession, nor found among his papers after his death, justified the inference that he then destroyed them.

4th. That the sufficiency of these declarations to repel the presumption that these gifts were advancements to the sons could not admit of doubt.

5th. That the complainant was competent to prove on his own offer the declarations made to him by his father.

6th. That the declarations proven by him did not constitute a *cause of action* upon which the father if living could have been sued; nor did they constitute or evidence, in the legal sense of the term, a *contract* between the party making them and the party to whom they were made.

7th. That the said declarations constituting part of the *res gestæ* were verbal acts, and might be proved by the same witnesses, whom the law has made competent to prove other facts relevant to the issues made up in the pleadings.

8th. That their tending to establish a fact that would carry the point in dispute in favor of the party testifying, did not disqualify him, the statute having removed the disqualification of interest.

9th. That it made no difference that the declarations were made by a party who was dead at the time they were proven.

APPEAL from the Circuit Court for Dorchester County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., MILLER and ALVEY, J.

*S. T. Milbourne* and *Wm. Shepard Bryan,* for the appellants.

It is a presumption of law that the gifts to the appellees were advancements; and it is incumbent on them to repel this presumption by competent and credible proof. *Clarke vs. Willson,* 27 *Md.,* 693.

The evidence offered to repel this legal presumption consisted entirely of declarations attributed to the deceased, which were not made at the time of the gifts. This evidence was incompetent, and was excepted to. *Clarke vs. Willson, ubi supra.*

The testimony of the appellees is excepted to, likewise, on the special ground, that it contravenes the Act of 1868, chapter 116. The direct and special object of the petition

34	v. 46.

was to establish these gifts as advancements. The inquiry was whether they had any effect whatever upon the distribution of the residue of the decedent's estate. The petitioners maintained that they operated to exempt it *pro tanto* from the claims of the donees to a distributive share. And the testimony of the appellees, after the death of an original party to the transaction, was intended to establish for them by virtue of their evidence, a claim on this residue, which they could not have by the force and effect of the gifts themselves standing alone.

The only testimony offered by the appellants, which was excepted to, was that of Graves and Mrs. North. They were not parties to any transaction with the deceased, and therefore their evidence is not excluded by the Act of 1868, ch. 116. The other evidence of the appellants shewed an anxious desire on the part of the decedent, that his property should be equally divided between his heirs-at-law, and rebutted and contradicted the evidence which sought to shew that these gifts were not advancements. But if the appellees' testimony is incompetent, the appellants needed no evidence whatever; the law declares the gifts to be advancements.

The declarations of the deceased were admissible only as part of the *res gestæ;* and they do not come within the rule on this subject. 1 *Greenleaf Ev.*, sec. 110 ; *Lund vs. Tynborough*, 9 *Cushing*, 36 ; *Commonwealth vs. Howard*, 4 *Gray*, 41.

The gifts were contracts executed, (2 *Blackstone*, 443 ;) *Fletcher vs. Peak*, 6 *Cranch*, (*S. C.*,) 136–7, and were as much within the prohibition of the Act of 1868, as the gift in *Johnson vs. Heald*, 33 *Md.*, 352.

*D. M. Henry* and *Sullivane*, for the appellees.

1. There are facts and circumstances disclosed in the testimony, and not excepted to, sufficient to show conclusively that the gifts of the intestate, in his life-time,

to the appellees, were not by way of advancement, but intended to be absolute. These facts and circumstances appear on the face of the conveyance to his sons, in the admission of facts, and in acts and declarations not expressing intention, testified to by the witnesses, from which the donor's intention can be clearly inferred. 1 *Greenleaf*, 287 and 289, approved in *Warner vs. Miltenberger's Lessee*, 21 *Md.*, 264.

2. The declarations of the donor to Robert B. Spedden, are clearly admissible and of controlling effect. They are so nearly connected with the conveyance and gift as to form part of the *res gestæ*. Both antecedent and subsequent acts and declarations may form part of the *res gestæ*. It is not essential that they should be exactly contemporaneous with the principal transaction. *Holb vs. Whiteley, Trustee*, 3 *G. & J.*, 188 ; *Handy & Tull vs. Johnson*, 5 *Md.*, 450 ; *McDowell, et al. vs. Goldsmith*, 6 *Md.*, 319 ; *Central of Bank of Fredk. vs. Copeland and Wife*, 18 *Md.*, 305 ; *Cooke, Garn. vs. Cooke*, 43 *Md.*, 522 ; *Walton vs. Green*, 1 *Car. & Payne*, 498 ; 2 *Bingham*, 99 ; *Milford vs. Billingham*, 16 *Mass. Rep.*, 108 ; *Mitchem vs. State*, 11 *Georgia Rep.*, 627, approved in *Shareswood's Notes on Starkie on Evidence, m. p*, 89 ; *Phillips on Ev.*, note 552, *p.* 590 ; 1 *Greenleaf on Ev.*, sec. 108.

3. Antecedent and subsequent declarations of a donor, as to his intent, are inadmissible when the question is advancement, *vel non*. Declarations a long time antecedent to the principal transaction, have been admitted to impeach a conveyance for fraud. *Cooke, Garn. vs. Cooke*, 43 *Md.*, 522.

Declarations made through a series of years, both antecedent and subsequent to the execution of a paper, have been received for the purpose of establishing it as a will. *Devecmon vs. Devecmon*, 43 *Md.*, 335 ; see also, *Lungren, et al. vs. Swartzwelder, et al., Ex'rs*, 44 *Md.*, 482.

*A fortiori*, should such declarations be competent, when offered neither to establish nor to impeach the validity

of a conveyance or gift, nor to affect the title of the grantee or donee, nor to vary, contradict or add to the terms of a written instrument, but solely for the purpose of showing the donor's intention collaterally, in order that the nature of the conveyance or gift may be considered in the division and distribution of property not embraced in it, of which the donor afterwards dies seized and possessed, intestate. Besides, an advancement is convertible into an absolute gift by the sole act of the donor, at any time before his death. Upon what principle then in such case, could subsequent acts and declarations be excluded, if offered to prove the intent to convert? And if admissible for such a purpose, why not admissible also for the purpose of showing the intent of an antecedent conveyance or gift, and to rebut the presumption of advancement, which without such explanation would arise? The case of *Wheeler vs. Wheeler*, 47 *Vermont Rep.*, 637, and the cases therein referred to, establish by unanswerable reasoning, the convertibility of an advancement into an absolute gift, and show that this may be accomplished by sufficient entries, (technically mere parol,) in his account-book, made by the donor alone, twenty years after the delivery of the property to be affected.

MILLER, J., delivered the opinion of the Court.

By this record it appears that John Spedden died in August, 1873, intestate, leaving four sons, five daughters, and the children of two deceased daughters as his sole heirs-at-law and distributees of his personal estate. In January, 1874, a bill was filed by the eldest son for a sale, for the purpose of partition of certain real estate of which his father died seized and possessed, and to this bill all the other heirs-at-law were made defendants. No question is made as to the necessity of a decree for the sale of this property, but the daughters and adult grandchildren aver in their answers, that the three sons, Robert, William

and Charles, were advanced by their father in his life-time by the conveyance to them of his "Home Farm," and that Hugh, the other son, had borrowed of his father $1500 secured by his notes which his father in his life-time destroyed, with a view of giving this sum of money to Hugh as an advancement, and they ask that these advancements may be brought into the estate for division with the other property, and that the sons may be excluded from any participation in the proceeds of the sale of the real estate sought to be sold under this bill, and in all the property which the deceased held at the time of his death. The same question is presented by some of the defendants by a petition or cross-bill, and whether these benefits to the sons are to be treated as advancements or as absolute gifts, is the only question which this appeal requires us to decide.

In this State as in England, a gift of money or property by a parent to a child, is presumptively an advancement, but this presumption may be repelled or rebutted by evidence proper for the purpose. In other words, whether such a gift takes the character and legal properties of an advancement or those of a full and absolute gift without a view to a portion or settlement, depends on the intention of the donor, and that intention may be ascertained by parol evidence of the donor's declarations at the time of executing the conveyance or making the gift, or of the donee's admissions afterwards, or by proof of facts and circumstances from which the intention may be inferred. These propositions have been so firmly established by a series of adjudications in this Court as to be no longer open to controversy. *Stewart vs. Patterson*, 8 *Gill*, 55 ; *Parks vs. Parks*, 19 *Md.*, 323 ; *Cecil vs. Cecil*, 20 *Md.*, 153 ; *Clark vs. Wilson*, 27 *Md.*, 693. The law as thus settled, must be applied to the proof and the facts and circumstances of each case as it arises. In this sense it appears that the father, in consideration of natural love and affec-

tion, conveyed by deed, his home farm to his three sons, Robert, William and Charles, on condition that it should never be sold out of the Spedden family, and reserving to himself a life estate therein. The deed itself affords no solution of the difficulty. Neither the restriction upon alienation nor the reservation of a life estate indicates any intention of the donor to make it other than an advancement, which the law declares it to be where the conveyance is silent as to its design in this respect. Nor do we find in any of the facts or circumstances of the case, apart from the declarations of the donor proved by parol evidence, anything from which we can draw the inference of a contrary intention. But if the declarations of the donor, upon which the appellees rely, be admitted' in evidence, and proved by a competent witness, they are conclusive of the question.

The testimony thus relied on is that of Robert Spedden, the complainant, who was called as a witness by his brothers, who were some of the defendants to the bill, but had the same interest in the question at issue as himself. This witness, after stating several previous conversations with his father, in which the latter expressed his wish to deed this farm to his three sons, to whom it was afterwards conveyed, testified in substance, that in the last conversation before the deed was drawn, his father urged him to have it prepared, saying life was uncertain, and to this witness replied he could not have it drawn without some papers to draw it by ; his father then said he would write the directions and give them to him the next time he came over, and then assigned as another reason for giving his boys more than his girls, that both his grand-fathers had done so, and added, "you boys have made the most of my money, and I am determined you shall have the most of it, and you are standing in your own light in not having the deed prepared." The next time witness went over, his father gave him written directions prepared by himself

for the preparation of the deed.   These directions, which were produced in evidence, seem to have been faithfully embodied in the instrument which was afterwards executed. The witness then further testifies that when his father gave him these instructions he said, you are a county commissioner, and when you go to town you can have the deed prepared ; that he went to town the following Monday, and gave the instructions to Reuben W. Hall, and got him to prepare the deed ; on the next day witness took the deed over to his father, who read it over and said it was all right, and ought to have been done before : I wanted to give the farm to you boys, and you stood in your own light in not having it done before ; and he further said, "when this deed is executed I am going to destroy Hugh's notes:" witness then said to him, "I thought you once said Hugh had gotten his part," to which his father replied, "I did say so, but there has something accumulated since, and I have changed my mind;" and further said, "when I destroy Hugh's notes it will make him fully equal with you and William in the land, but not quite as much as Charlie ;" that his father then also said, "I want you boys to have that *much more* than the girls, and *all the rest* of my property I want divided *equally among all my children;* this will give you $1000 or $1200 more apiece, and that will be a nice little present for each of you," and asked witness not to mention this, as the girls might be jealous if they found out the boys would get more than they did ; that his father then appointed the following Saturday, which is the usual business day in that part of the county, for the execution of the deed, but finding that the magistrate was absent from home, he afterwards postponed it until the next Saturday, and on that day his father, witness and his brother William, and the magistrate, met by appointment at a neighboring school house, and the deed was signed and acknowledged, and then delivered by his father to witness to be taken to

the clerk's office to be recorded, which witness did, and it was duly recorded.

Now, it is contended by the appellants that these declarations are inadmissible because they were not made "at the time" the deed was executed. But we do not understand that in either of the cases referred to the Court intended to lay it down as an inflexible rule that such declarations were inadmissible unless made exactly cotemporaneous with, or at the very instant the act of signing the deed, which perfected the gift, took place. When they declared that the character of the estate conveyed in respect to its being an advancement or an absolute gift follows the *intention* of the donor, and that such intention could be ascertained by parol evidence of his declarations "at the time of executing the conveyance." We think they intended nothing more than to state the general rule that such declarations, when offered in proof, must, in order to be admissible, form part of the *res gestæ*, that is, must be so connected with the *making of the gift* as to determine its character in this respect. On this general subject the Courts have never attempted to fix an unbending rule applicable to all cases.

As has been said by the highest authority on the law of evidence, admissibility of circumstances and declarations in such cases must be determined by the judge according to the degree of their relation to the principal fact and in the exercise of his sound discretion, it being extremely difficult, if not impossible, to bring this class of cases within the limits of a more particular description. The principal points of attention are whether the circumstances and declarations offered in proof were contemporaneous with the main fact under consideration, and *whether they were so connected with it as to illustrate its character.* 1 *Greenlf. Ev.*, sec. 108. To examine and review the multitude of cases in which questions of this character have arisen is a task we shall not attempt, nor does the exigency

of the case before us require it.  In *Cross vs. Black,* 9 *G. & J.*, 198, a case quite analogous in principle to the present, where it was important to show to what State a party intended to remove and reside on leaving Maryland, the Court said : "One of the acknowledged exceptions to the rule which prohibits a party from producing his own declarations in his favor is where such declarations are necessary in explanation of an act, which takes its *character* from the *design and intention* of the party who does it   The declarations made at a time when occasioned by no perceptible motives of interest, like other circumstances surrounding an act, are in such instances considered as part of the *res gestæ.*"  And in that case, declarations of the party *while making preparations* for his removal, though made some months before he actually took his departure, were held to be within the rule and admissible in evidence.  Here the declarations (which alone were admitted by the Court below) were all made when the instructions by which the deed was to be drawn, and which the donor himself had written out, were delivered by him to the witness, his son, or after the deed had been prepared, read over and approved by him, and when he appointed a convenient business day shortly thereafter for its execution and acknowledgment before a magistrate.  The fact that the actual execution and acknowledgment were accidentally delayed for a week does not, in our judgment, render them inadmissible.  They were declarations made by the donor whilst the instrument, which was to perfect the gift, was in course of preparation and but a short period before it was actually executed.  In our opinion, they were properly received in evidence for the purpose for which they were offered.  It was not necessary, in order to effectuate his purpose thus recently and explicitly declared, for him to repeat in the presence of a stranger, at the moment he signed his name to the deed, his intention, in the distribution of his property, to give a preference to his sons over

his daughters, especially when, to avoid jealousy and resentment on their part, he had expressed a wish that that intention should be concealed from the latter. A careful consideration of the cases before referred to and an examination of the original records containing the facts in reference to which these decisions were made, have satisfied us this Court has neither sanctioned nor adopted any such rigid rule as would exclude, in cases of this character, declarations of intention made at the time and under the circumstances disclosed by the proof in this record. The declarations respecting the gift to his son Hugh, by the destruction of his notes, were made at the same time, under the same circumstances, and are of the same character. He declared his intention to destroy them when the deed was executed, and this, coupled with the fact, proved in the case, that these notes were never afterwards seen in his possession, nor found among his papers after his death, justifies the inference that he then destroyed them. Being, therefore, admissible for that purpose, the sufficiency of these declarations to repel the presumption that these gifts were advancements to the sons cannot admit of doubt.

The remaining inquiry is were they proved by a competent witness? In deciding this question we shall assume the complainant testified upon his own offer. Incapacity of witnesses on the ground of interest was removed by the Evidence Act of 1864, ch. 109, and parties to suits were allowed to testify for themselves save in certain specified cases. These exceptions so far as this case requires them to be considered, are these contained in the second section of the original Act as modified by the Acts of 1868, ch. 116, 1874, ch. 385, and 1876, ch. 222. In *Johnson vs. Heald, Ex'r of Frazier,* 33 *Md.,* 352, we had occasion to consider and construe a part of the Act of 1868. There an executor was a party to the suit and he had, under the clause in the proviso to this statute relating to conversa-

tions had with the opposite party, testified, upon his own offer, as to such conversations respecting the cause of action or controversy, which antedated the death of the testator, and we held that the other party could there on his own offer testify in respect to *such conversations,* by giving such evidence as would fairly tend to contradict, explain or modify them, *but no further.* Here there is no executor or administrator a party to the suit, and the point there decided does not arise in this case. If the complainant is not competent to prove on his own offer these declarations made to him by his father, it must be because he is excluded by the clause running through all the statutes, which declares that "when an original party to a *contract* or *cause of action* is dead," neither party shall be admitted to testify on his own offer, or upon the call of his co-plaintiff or co-defendant. Now, what is the case before us? It will hardly be contended that the declarations proven constituted a *cause of action,* upon which the son could have sued his father if living, or his personal representative after his death. Nor do we perceive how they can be said to constitute or evidence, in the legal sense of the term, a *contract* between the party making them, and the party to whom they were made. As defined by Chancellor KENT, (2 *Kent's Com.*, 449,) a contract is " an agreement of *two or more* persons upon sufficient consideration to do or not to do a particular thing," but it would appear as strange to the legal as to the common mind, to say that if a party makes a *gift* or executes a *will* he thereby enters into a *contract* with his donee or legatee. Here a father was making a gift to his sons. The amount and terms of the gift itself, as well as whether it should be absolute in its character or by way of advancement depended solely upon his own will and intention, and in no manner upon the assent, concurrence or volition of the donees. What he said at the time was important to determine whether the gift assumed one or the other of

these qualities. His declarations then made constituting part of the *res gestæ* are verbal acts, and may be proved by the same witnesses whom the law has made competent to prove other facts relevant to the issue made up in the pleadings. That they tend to establish a fact that will, carry the point in dispute in favor of the party testifying, does not disqualify him, for the statute has removed the disqualification of interest. Nor does it make any difference that the declarations were made by one who was dead at the time they were proven. In *Jones vs. Jones,* 36 *Md.,* 447, certain parties filed a petition in the Orphans' Court claiming as against the widow, one-half of the personal estate of an intestate on the ground, that they were his nephews and nieces. The fact of relationship was proved by declarations of deceased members of the family. The question was there raised whether the petitioners were competent witnesses to testify as to such declarations, and the Court held there was nothing in the Act of 1868, to exclude them, and that they were clearly competent. There as here the fact established by the declarations affected favorably to the parties testifying, the distribution of the estate in controversy. The only difference between that case and the present is, that the fact proven by the declarations in this case, affects the distribution amongst his children of the estate of the party making them, but it establishes no *contract* between him and the sons, nor any *cause of action* upon which they could ever have sued him or his executor or administrator. For these reasons it is our opinion the declarations were proved by a competent witness.

*Decree affirmed and*

*cause remanded.*

(Decided 13th June, 1877.)