IN THE MATTER OF THE ESTATE OF ENGLEBERT PICKEN-
BROCK, R. F. JORDAN, Appellant.

**Advancements.** Testator signed notes as surety for his son, with the
understanding that, if compelled to pay same, the amount should
be deducted from the son's share of the estate. Some of the
notes were paid by testator, who kept them as memoranda, and
others were paid by his administrator. *Held*, that the sums so
paid were advancements.

*Appeal from Polk District Court.*—HON. C. P. HOLMES,
Judge.

TUESDAY, MAY 11, 1897.

W. A. PICKENBROCK, administrator, filed his appli-
cation, showing as follows: That deceased left as his
only heirs Amelia Pickenbrock, his widow, Emma
Reynold, Gus W. Pickenbrock, Nettie McCauley, and
W. A. Pickenbrock; that the estate is nearly ready to
close; that the administrator has sold certain real
estate, and that, when all the money is paid thereon,
there will be three thousand five hundred dollars to
distribute, and that the share of each child will be
about six hundred dollars; that deceased had
advanced to and on behalf of Gus W. Pickenbrock
sums of money largely in excess of his share in the
estate, which sums were so advanced, deceased intend-
ing them as advances; and that the same should be
deducted and set off from and against the share of Gus
W. Pickenbrock in his estate. Petitioner asks an
order directing him to distribute the funds to the
widow and children other than said Gus, and a finding
that said Gus W. Pickenbrock has no interest in the
assets in the hands of the administrator. Appellant,
Jordan, filed his answer, denying that said Gus

W. Pickenbrock has no interest in the estate, or in the funds in the hands of the administrator. He alleges, that he is the owner and holder of a judgment for four hundred dollars against Gus W. Pickenbrock; that after the death of Englebert Pickenbrock, appellant procured an attachment against the interest of said Gus W. Pickenbrock, in certain lands described; that on the fourteenth day of November, 1893, a judgment and order for special execution were granted to appellant; that said real estate was sold by order of the court, by the administrator "without in any wise affecting the rights or the interest of the appellant in the judgment aforesaid." Appellant asks that his judgment be declared a special lien upon the funds in the hands of the administrator that would be going to said Gus W. Pickenbrock, and that the court order the same to be paid upon said judgment. The court found that advancements had been made to Gus W. Pickenbrock, in an amount equal to, or exceeding that shown due to him, in the hands of the administrator, and ordered the administrator to distribute the funds in his hands without requiring him to pay the judgment of the appellant; and from this order R. F. Jordan appeals.—*Affirmed.*

*Jordan & Brockett* for appellant.

*Cummins & Wright* for appellee.

GIVEN, J.—I.    The facts are, in substance, as follows:    Englebert Pickenbrock and his sons, W. A. and Gus W. Pickenbrock, executed their promissory note to the Polk County Savings Bank for a loan of four hundred and fifty dollars, Gus W. receiving the money so borrowed. Gus W. Pickenbrock kept the interest paid for one year, and paid fifty dollars on the principal. The note was renewed at ninety days after date

by Englebert and W. A. Pickenbrock. Gus W. Pickenbrock, being absent, did not sign the renewal. It was afterwards renewed from time to time, but whether Gus W. joined in the renewals does not appear. The administrator paid four hundred and forty-eight dollars and two cents in satisfaction of the note as an approved claim against the estate. Englebert Pickenbrock also went on a note with Gus to the Valley Bank for a loan of two hundred dollars, Gus receiving the money. This note Englebert Pickenbrock paid prior to his death. Also upon a note for two hundred dollars to the Savings Bank of Iowa, and on another note for two hundred dollars to the People's Bank, Gus receiving the money in each instance. The administrator paid two hundred and twenty-three dollars and forty-seven cents in satisfaction of the note to the Savings Bank. The note to the People's Bank was secured by collaterals given by Englebert Pickenbrock, out of which the People's Bank realized payment of the note. The testimony shows that each of these transactions was for the benefit of Gus W. Pickenbrock, and that Englebert Pickenbrock signed the notes as security only. Gus testifies: "Father went my security for the note [referring to the $450 note], and he says I should pay the note if I could, and if I didn't pay it, and he had to take the note up, it should be taken out of my share of the estate." In speaking of all the notes, he further states: "When these notes were signed, he said that if I didn't pay the money back, and he had to take the notes up, it was to be taken from my share of the estate." On cross-examination he says, with respect to the four hundred and fifty dollar note, "The understanding was that the debt was mine, and that I would have to pay it." In answer to the question, "Did he loan it to you, then?" he answered: "Yes, sir. I expected to pay it back; and he says, 'If you don't pay

this,—if I have to pay this,—it will be taken out of your part of the estate.' I agreed to pay the note if I could. The agreement was that I was to pay off this note at the bank if I could. * * * The understanding was that he was surety for me." The only other evidence bearing upon the question of advancement is that of W. A. Pickenbrock, that his father said that all the money that was advanced to any of the children should be taken out of their shares. Also the testimony of Mr. Carroll Wright that deceased had said to him that he had advanced to Gus very much more money than was his proper share of the estate, and that this money that he had paid, or was liable for, he wanted taken out of Gus' share; that it was an advance. The testimony of W. A. Pickenbrock and Mr. Wright is objected to upon the ground that the declarations testified to were not made in the presence and hearing of Gus Pickenbrock. Whether or not the objection is well taken, we need not determine, as the uncontradicted evidence of Gus Pickenbrock shows beyond doubt that at the time the notes were given it was the intention of the deceased, agreed to by Gus Pickenbrock, that whatever deceased, or his estate, should have to pay on said notes, would stand as an advancement to Gus; hence the result must be the same whether or not that evidence is admitted.

II. We now inquire whether the transactions shown in the evidence constitute an advancement to G. W. Pickenbrock to the extent of the money paid for him by the deceased before his death, or by the administrator since. "An advancement is a gift, by anticipation, from a parent to the child, of the whole or a part of what is supposed such child would inherit on the death of the parent." *McMahill v. McMahill,* 69 Iowa, 118 (28 N. W. Rep. 471). "It is nothing more or less than an irrevocable gift made by the parent to the child in anticipation of such child's future share of

the estate." *In re Estate of Lyon*, 70 Iowa, 381 (30 N.
W. Rep. 644). See, also, *High's Appeal*, 21 Pa. St.
287. In 2 Woerner, Adm'n, 1214, it is said that
advancements are gifts *in præsenti*. "The gift, in
order to constitute an advancement, must be irrevoca-
ble, divesting entirely all of the ancestor's interest,
and forming no part of the property to be adminis-
tered." In *Grey's Heirs v. Grey's Administrators*, 22
Ala. 236, advancement is said "to be a provision made
by the parent for his child, of money or property, the
entire interest in which passes out of the former in
his lifetime; though it is not requisite, in all cases,
that it should take effect in possession before the
death of the parent." "Whether a gift or conveyance
is to be regarded as an advancement or not, is, of
course, determined by the intention of the donor at
the time the gift is made." 2 Woerner, Adm'n,
1217. By executing these notes the deceased
made himself and his estate liable thereon as surety,
and there can be no doubt, under the evidence, but
that it was his intention that whatever he or his
estate might have to pay on account of that liability
should stand as an advancement to his son Gus, and it
is equally clear that Gus agreed that he should be so
charged. The situation is not different from what it
would have been had the father given his son these
amounts of money under an agreement that what-
ever thereof the son failed to pay should be charged
as an advancement against his share in the estate. *In
re Blockley v. Blockley*, 29 Ch. Div. 250, a gift by a father
to a son to enable the son to pay a debt was held,
on the death of the father intestate, to be an
advancement under the statute of distributions. The
fact was that, the son being in debt, his father gave
him a check, to enable him to pay the debt. The
court says: "I think that the sum of money given by
a father to his son to pay his debts is or may be an

advancement as much as a sum of money given him for other purposes." Quoting from *Boyd v. Boyd*, L. R. 4 Eq. 305, Wood, V. C., it is said: "Wherever a sum is paid for a particular purpose, which is thought good and right by the father, and which the son himself desires, if it be money which is drawn out in considerable amount, and not a small sum, it must be treated as an advance. The payment of the money is the important thing. The court does not look to the application. As to the debts, suppose the young man had represented to his father that it was extremely important they should be paid, in order that he might keep his position in the army, and the father had paid those sums in order to assist him, it would have been clearly an advance." *Johnson v. Hoyle*, 3 Head, 57, was an action by the creditor of an heir to subject his share in the estate to the payment of the debt, to which defense was made on account of advancements. The proof shows that: "The intestate, then being indorser for his son, Daniel H., in the Branch Bank of Tennessee, at Athens, on a note previously discounted, which, with interest, then amounted to eight hundred and eighteen dollars and thirty-two cents, took up said note, and gave his note and indorsers for the same; and after several renewals and payments in his lifetime the same was paid off by his administrator in February, 1858, out of the assets of the estate. It is stated in the answer that this was regarded by John Hoyle as an advancement to his son, and it is insisted that it shall be so considered. But on this point there is no proof. Yet it is certain that he paid that amount to or for his said son, and took from him no obligation of any kind for it. Nor does it appear that he ever claimed or demanded it from him as a debt. Then, whether it shall be considered an advancement or a debt is left to the legal presumption of such a case. We held at Nashville, last term, in the case of *Vaden*

*v. Hance*, 1 Head, 300, that where a father advances
money to a son, or pays debts for him, the law pre-
sumes it is an advancement, unless it is shown by proof
or circumstances that it was intended to be held as a
debt against the son.   Such we consider to be the
law, and consequently must regard this as an advance-
ment."    See, also, *Steele v. Frierson*, 85 Tenn. 431 (3 S.
W. Rep. 649); *Graves v. Spedden*, 46 Md. 527.   It will
be observed that those cases rest upon the presump-
tion of law that the payments were to be advance-
ments, while in this case there was an express agree-
ment between the father and son to that effect.   We
think, in the light of these definitions and decisions,
that the amounts paid by the father during his life-
time were clearly advancements.   A gift, although
it must be made in the donor's lifetime, may take
effect at the donor's death, or on a contingency within
a time, or on a contingency which has happened, and
still constitute an advancement, 2 Woerner, Adm'n,
1218; *Hook v. Hook*, 13 B. Mon. (Ky.) 526.   Appellant's
counsel say, in argument, that deceased never returned
the note that he paid to Gus, and never notified Gus
what he finally intended to do.   When the parent
takes a note or other security for repayment, it is
*prima facie* a debt, and not an advancement; "but if
he takes the notes merely as a memoranda of accounts,
and not as evidence of debts, his intention must pre-
vail, and the amounts be charged as advancements."
2 Woerner, Adm'n, 1219.   We think it cannot be said,
under the evidence, that Englebert Pickenbrock
assumed this liability for Gus, or that he paid the
amount that he did as a gratuity, not to be accounted
for, nor that, in view of the agreement, the relation
of debtor and creditor existed.   We fail to discern
why any different rule should be applied to the pay-
ments made by the administrator, from those made by
the deceased.   They were all made in pursuance of

the agreement and of the expressed intention of Mr. Pickenbrock, Sr., that the amounts thereof should constitute an advancement to Gus. As the amount advanced is in excess of the portion coming to Gus, we need not consider the other question discussed in the case. The judgment of the district court is AFFIRMED.