DAVID M. FELL, Appellant, v. KATE BRADSHAW et al., Appellees.

OCTOBER 18, 1927.

REHEARING DENIED JANUARY 20, 1928.

[redacted]

*Ralph H. Munro,* for appellant.

*Starr & Jordan,* for appellees.

MORLING, J.—The case comes here only on the demand for alternative relief,—that the conveyance attacked be decreed to be an advancement. It was for 160 acres, by Jane Fiedler, to her three daughters by her second marriage. The plaintiff is her son by her first marriage. The deed is dated October 14, 1913, was drawn by James P. Starr, attorney, and was kept in his possession, under written instructions from the grantor, until after her death, in 1926. Plaintiff's father died about 1858, leaving an estate which was administered by plaintiff's mother. She was also plaintiff's guardian. Land belonging to the first husband was sold, about 1860, in the course of administration and guardianship, to the second husband, Daniel Fiedler. The second husband gave to the guardian a purchase-money mortgage. Settlement between plaintiff and his mother, as guardian, was made in 1875, plaintiff acknowledging receipt of $1,838. Plaintiff claims that he received from his stepfather, for his interest in the estate, land which proved to be of little or no value. The stepfather is said to have died "some years" before the deed in controversy was made. The evidence offered to show that the deed was intended, not as an advancement, but as an unqualified gift, consists of declarations made by the mother, together with circumstances attending the distribution of the estate of plaintiff's father. A witness (testifying in 1926) says that, at a conversation at the mother's home, about 15 years before the giving of her testimony, the mother said that:

"She wanted the land to go to the girls, that David's

[plaintiff's] estate had been settled; he had got his share out of his father's estate; and she wanted the girls to get the land out of what she had left. * * * She said, 'He has got all of the Fell estate,'—hers and his both. I have heard her say that several times.''

The husband of one of the heirs (administrator of the mother's estate) testifies that he heard this conversation, and that the mother ''said she was giving some of the children money now, and then she up and told that she wanted the land to go to the girls—the three girls. * * *She said that David, her son, had received the Fell estate, and she thought it was right that the land should go to her own daughters—or his own daughters. Yes, she said she was going to fix it that way,—it was Fiedler's request, and she was going to do it.''

Mr. Starr testifies that, at the time the deed was drawn, the mother ''said to me that she had a son by a former marriage; that this son had not helped to earn or accumulate any of that land; that she received this land through Daniel Fiedler; and that she wanted this land, for this reason,—she thought it ought to go, for this reason, after she was done with it, to the heirs of herself and Daniel Fiedler: that is, the heirs—her heirs of whom Daniel Fiedler was the father.''

Daniel Fiedler left apparently nearly 500 acres of land, which was divided between the widow and heirs. In the division, the widow, plaintiff's mother, got the 160 acres in controversy.

An advancement is an irrevocable gift by the parent to the child, in anticipation of the child's future share of the estate. *In re Estate of Pickenbrock,* 102 Iowa 81, 84. The principle lying at the base of the doctrine of advancements is the presumption that the parent intends that his children shall share equally in his estate, not only in that which he may leave at his death, but inclusive of that which he in his lifetime by gift divides among them. It is presumed that he intends his children to fare equally in the whole patrimony, and that a substantial gift to one shall be equalized in the final distribution. When an irrevocable gift to less than all is shown, the burden of going on with the case, to show that the gift was not intended as an advancement, is upon the participants in it.

It appears here that the mother believed that plaintiff had

got all of the property of his father, including that portion that fell to her; that the land in question was land that belonged not to plaintiff's father, or land that plaintiff had helped to earn or ought to share in, but land that belonged to the daughters' father, and ought to go to them; that the daughters' father had so requested. Her thought was that the gift of the land to the daughters would not create inequality, but would forestall an inequality and unjust distribution which would result, should it, as property of hers, instead of her husband's, go in part to plaintiff, thereby giving him not only all of his own father's property, but part of his stepfather's property. She had received the land from the stepfather. He had desired it to go to his children,—not to the former husband's child. She was actuated in part by a desire to carry. out her second husband's purpose. *Bash v. Bash,* 182 Iowa 55, 58, 59; *Bissell v. Bissell,* 120 Iowa 127; 18 Corpus Juris 912.

Plaintiff stresses the words of the witness that the mother wanted the girls to get the land "out of what she had left," as indicating that, in the division of her estate, she wanted the landed part of it to go to the girls, as their portion, leaving the remainder for plaintiff. This interpretation takes those particular words out of their setting and gives no effect to the context, as has been sufficiently indicated. We are of the opinion that any presumption that might otherwise arise from the mere fact of the gift has been overcome, and that it clearly appears that the gift was not intended as an advancement. It is not for the court to revise decedent's computations or question her judgment. Of course, evidence as to the unreasonableness of the intention attributed to her is admissible, for the purpose of determining its existence. We see no reason for doubting the testimony given concerning the mother's declarations, nor for questioning the reasonableness of her conclusion.—*Affirmed.*

EVANS, C. J., and DE GRAFF, ALBERT, and WAGNER, JJ., concur.