CLARA M. ROLLINS, Appellant, v. MAGGIE B. JARRETT et al., Appellees.

DECEMBER 14, 1928.

*Charles Roe* and *John J. Hess,* for appellant.

*Genung & Genung* and *G. C. Wyland,* for appellees.

MORLING, J.—Frank Pike died in 1915, leaving the property in controversy to his widow, Helen L. Pike. Plaintiff and defendants Maggie B. Jarrett and Emma Louise Matthews are his children. On July 31, 1915, the widow and children and children's husbands made a written agreement, which plaintiff here claims constituted a family settlement. The attorney who drew it testifies (without objection):

"There had been some contention by some of the heirs of the estate that Mr. Rollins and his wife had been successful in influencing Mr. Pike and his wife to get certain funds and money and advancements from him without any payment for it, and they were objecting to the fact that Mr. Rollins and his wife

were getting more out of the estate than they were, by reason of influence over Mr. Pike and his wife, and there was some controversy in regard to what should be done with the property of the old lady. She then was getting quite feeble physically,— 79 years old. She was a very old lady, and it seemed to be the desire of the heirs that they enter into some agreement whereby, from and after the death of Mr. Pike, there would be nothing done by any of the heirs to take advantage of each other by influence upon their mother to get property from her which would be to a disadvantage against the others. I told them to enter into something in writing; that we didn't want any trouble in regard to handling the property,—something which would settle all controversy between them as to the property of Mrs. Pike, and allow it to stay in abeyance and *statu quo* until the death of Mrs. Pike, when they each and all would share equally in her estate. This is the substance of the conversation I had with the signing parties to that instrument.''

Plaintiff's petition, after setting out relationship of the parties and the making of will by Frank Pike and acceptance thereof by the widow, alleges that, about July 31, 1915, the plaintiff and her husband and the defendant wives and husbands and Vieth entered into a written agreement, providing for the appointment of Vieth, as agent or attorney in fact for Helen L. Pike, and giving him full authority to look after her business during the rest of her life; that the written agreement provided that neither of the children nor their husbands should borrow any money from Helen L. Pike during her lifetime, or ask her to make any advancements; that the agreement went into effect, and Vieth acted thereunder until the death of Helen; that, about March 5, 1917, ''in violation of the terms of said written agreement before referred to, and in fraud of this plaintiff and to her damage, defendants Maggie B. Jarrett * * * in some manner to plaintiff unknown induced the said Helen L. Pike to execute and deliver to defendant Maggie B. Jarrett a warranty deed'' of premises described; that the only purported consideration was $1.00 and love and affection, and there was no actual consideration. The same allegation, though directed to another deed of other land, is made with respect to the defendants Matthews. It is alleged that the property included in the deeds was worth $6,000, and that defendant wives have been in possession since

the date of the deeds, the reasonable rental value whereof is stated to be $3,000. It is further alleged that Helen died in February, 1926, and defendant White is administrator of her estate; that the defendant wives and husbands knew, at the time of the receipt of the deed, that Vieth was such agent and attorney in fact, and that he alone had authority to look after Helen's business, "and that said Helen L. Pike had no right or authority to make any binding contract or deed of any of her said property; and that, by reason thereof, the deeds before referred to * * * in law and in fact created no right, title, or interest in the real property described * * *"

In another count it is alleged that the deeds were without consideration, and if held valid, are advancements; that plaintiff is entitled, in the settlement of the estate, to receive an amount equal to the amount of such advancements, before other distribution is made. The written agreement is not set out by copy in the petition, but it is in the answer. The deeds are, as alleged, made by Helen L. Pike, widow, "in consideration of the sum of one dollar, love and affection to me in hand paid."

It will be seen that the plaintiff's action is founded upon the agreement of July 31, 1915, as it is, and not upon what it should have been, or was intended to be. The agreement appears to have a double aspect. In form, it is an agreement between the widow, her heirs, and their husbands, as parties of the first part, and Vieth, as party of the second part; but in it, as will be seen, is a further agreement that purports to be between the heirs and their husbands. The agreement reads:

"This stipulation and agreement entered into by and between Helen L. Pike, Emma Matthews and husband W. S., Maggie Jarrett and husband Geo. M., Clara Rollins and husband J. L., parties of the first part and A. C. Vieth party of the second part, witnesseth.

"That whereas, Frank Pike died testate on or about the 29th day of June (1915) leaving surviving him his widow Helen L. Pike and the wives of the parties mentioned above, and

"Whereas the said Emma Matthews, Maggie Jarrett and Clara Rollins together with the widow are the heirs of Frank Pike deceased, and

"Whereas by virtue of the last will and testament of Frank

Pike deceased his widow Helen L. Pike receives large sums of money and property, and

"Whereas the said widow is now some 79 years of age and not physically able to look after the said property and to keep the same properly invested and

"Whereas the said Emma Matthews, Maggie Jarrett and Clara Rollins together with their husbands firmly believe that the said Helen L. Pike is competent to execute and negotiate power of attorney and fully understands the nature of her acts and authority vested in said attorney in fact and

"Whereas the said A. C. Vieth desires that if appointed attorney in fact to transact the business for the said Helen L. Pike that he have the co-operation and support of all the heirs of Frank Pike deceased together with the husband of said heirs;

"Now therefore it is agreed by and between the parties hereto that the said A. C. Vieth shall be appointed attorney in fact for Helen L. Pike and the undersigned nor any of them shall begin any action in law or equity to remove the said A. C. Vieth (except the said Helen L. Pike) and hereby agree to co-operate with the said A. C. Vieth in managing his business as attorney in fact and do all they can to assist him in said business, and it is further agreed by and between the heirs of Frank Pike deceased and their husbands that none of them shall borrow any money from the said Helen L. Pike during her lifetime or ask her to make any advancements to them of any kind or character and that the said A. C. Vieth shall have full power and authority to look after her business during the remainder of her life."

This was signed by all the parties, and acknowledged.

Plaintiff's propositions are that the agreement "prohibited any of the children of the said Helen L. Pike from receiving a greater share than the other;" that the deeds are in violation of the agreement, and "operate as a constructive fraud, and perhaps as an actual fraud * * * that the contract as entered into constituted a family settlement. * * * ;" that, if the conveyances were not prohibited by the contract, they should be treated as advancements.

It may be, upon the scrivener's testimony, that the intention was to preserve Mrs. Pike's title and retain the *status quo* until her death; but, whatever the intention was, the action is founded

upon the agreement as it was written. The agreement did not purport to be a family settlement, nor to disable Helen L. Pike from selling, giving away, or bequeathing by will, as she might choose, her property. Nor did it provide how distribution thereof should be made, before or after death. The actual agreements were: (1) That Vieth should be her attorney in fact, and that the heirs and their husbands, or any of them, should not sue to remove him; (2) that they should co-operate with Vieth and assist him. As between the heirs and husbands, it was agreed: (1) That none of them should borrow any money from Helen, (2) or ask her to make advancements, and (3) that Vieth should have full power to look after her business during her lifetime. The agreement contained not a word disabling Helen from voluntarily disposing of her property as she might desire, or making such adjustments as she of her own volition might think just. The heirs and their husbands agreed not to borrow, or ask for advancements. The agreement proved does not purport to be a family settlement. It gives the plaintiff no right in the property in question, does not prohibit the deeds complained of, and confers on plaintiff no right to have them declared invalid.

The evidence respecting the purpose of the deeds is the testimony given by Vieth that defendant Matthews, with whom Mrs. Pike lived, "told me Mrs. Pike wanted to see me. It was the fourth of March. I saw Mrs. Pike and talked with her. No one else was present at that time. Mrs. Pike said, 'Mr. Vieth, the reason I wanted you to come over was, I have made up my mind to give this Goose farm to the two girls,—that is, Mrs. Matthews and Mrs. Jarrett,—and I want to deed it to them, and I want you to make out two deeds and bring them back for my signature. I said, 'That is what you want to do, is it, Mrs. Pike?' and she said, 'Yes.' 'Well,' I says, 'what about Mrs. Rollins?' 'Well,' she says, 'the reason that I am going to deed and give this Goose farm to Mrs. Matthews and Mrs. Jarrett is because that Levi and Mrs. Rollins have received more than their share, and I do this in order to equalize it, and I think that equalizes it pretty well.' "

Plaintiff moved to strike out this answer, as incompetent, irrelevant, and immaterial, and because the witness was incompetent, sustaining a confidential relation, and incompetent to

testify "to things that were said to him or passed to him because of the confidential relationship." Vieth was a hardware merchant. The objection is not argued, and is not sustained. Plaintiff offered her son's testimony that, in May, 1917, plaintiff asked Mrs. Pike "why she gave the deeds, and she said they had been asking for them, so that would make them even with what papa got from the estate. * * * Then mother told her that papa didn't get anything from the estate,—hardly anything; it was mostly old notes in settlement of that share, and grandma felt bad about it, and cried, because she didn't want to do anything against their other contract. * * * She said she had been told that the Goose farm was not any good,—was not worth much."

It appears that plaintiff's husband filed a claim against the estate for $1,784.09, which the administrator denied, and to which he filed counterclaim on notes of plaintiff and her husband for $870.25. Plaintiff's husband got a verdict for $150.

The two pieces of land conveyed to defendants Jarrett and Matthews seem to have constituted what was known as the "Goose farm," of about 40 acres, the value of which was, according to plaintiff's evidence, about $150 per acre, and according to defendant's evidence, about $65 to $90 per acre. The evidence of rental value varies from $5.00 to $9.00 per acre.

The suit is not based upon fraudulent representations or undue influence or mental incapacity of the mother. Though, in the absence of evidence to the contrary, there might be a presumption that the deeds were intended as an advancement, the evidence repels such presumption. It is uncontradicted that the mother gave the two deeds in question to equalize, as she supposed, the defendant heirs with the plaintiff, and because of what plaintiff's husband got from the estate. It is not for the court to review the validity of her reasons, nor, on the issues here, to decide whether she was misled or deceived. The conveyances cannot be held, on this record, to have been made by way of advancement. *Fell v. Bradshaw*, 205 Iowa 100.—*Affirmed.*

STEVENS, C. J., and DE GRAFF, ALBERT, and WAGNER, JJ., concur.